## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CARL EDWARD BELL,                    :

                            **Plaintiff**        :

                                **v.**        :

KIM ARDERY, *et al.*,                    :

                    **Defendants**        :

CIVIL ACTION NO. 1:22-2003

(JUDGE MANNION)

### MEMORANDUM

Presently before the court in this prisoner civil rights case is remaining Defendant, Kim Ardery's, the supervisor of Benner Township State Correction Institution's ("SCI-Benner Township") medical department, motion for summary judgment. (Doc. 84). In support of the motion, Defendant filed a brief (Doc. 89) and a statement of facts (Doc. 88) in accordance with Local Rule 56.1. Plaintiff has not opposed the motion and by default admits to the statement of material facts.[1] For the reasons set forth below, the motion for summary judgment will be granted and the matter terminated.

---

[1] Plaintiff failed to file an opposition to the motion or respond to the statement of material facts by the extended deadline of March 31, 2025, (Doc. 94), after he was warned that "[f]ailure to timely file an opposition brief will result in the motion being deemed unopposed… [and] [f]ailure to timely file a statement of material facts will result in defendant's statement of material facts being deemed admitted." (Doc. 90 at 1).

## I. **Background**

Plaintiff, Carl Edward Bell, was an inmate confined at SCI-Benner Township at all relevant times. (Doc. 1). According to the complaint, Bell was seen by Defendant Tiffany Sottile, a nurse practitioner in the prison, for complaints of loss of feeling in his toe on June 8, 2022. (Doc. 1 at 7). Sottile examined his foot and diagnosed him with "Morton's Neuroma," a benign tumor. (*Id.* at 8; Doc. 88 ¶ 2). Medical staff ordered medication for Bell and scheduled him for an ultrasound examination for further diagnosis in a little over three months' time on September 22, 2022. (Doc. 88 ¶ 3). Bell was informed that he would be seen by a podiatrist who would inject a steroid into his foot. (Doc. 1 at 8).

On June 16, 2022, experiencing continuous pain in his foot, Bell filed a sick call request. (*Id.* at 9). He was subsequently seen by nurse Taylor.[2] (*Id.*). Bell asked the nurse whether his ultrasound examination could be moved up sooner, insisting that "he cannot wait until September because he has a 'benign tumor in his foot'" and that "'he is not one to wait to get things

---

[2] Taylor is not named as a defendant.

taken care of.'" (Doc. 88 ¶ 7). Nurse Taylor said she could not move up his ultrasound because there was a backlog of ultrasounds that needed to be performed, and that his ultrasound was the "next available." (Doc. 88 ¶ 8.) Nurse Taylor also explained to Bell that she could not refer him for an appointment with a podiatrist, but directed him to make such a request in writing to the medical department—which he did. (Doc. 1 at 9).

On June 22, 2022, the medical department responded to Bell's request, confirming that September was indeed the earliest date for an ultrasound and directed Bell to sign up for a sick call appointment if his pain ever worsened for a re-evaluation. (Doc. 88 ¶ 10). A couple of weeks later, on July 2, 2022, Bell submitted another sick call request in which he stated that he was experiencing sharp pain in his foot and requested that the tumor be removed. (Doc. 1 at 10). On July 11, 2022, Bell was x-rayed for the purposes of ruling out a fracture, and was reminded that there was a backlog for ultrasounds. (Doc. 88 ¶ 12). At the time, Bell said he understood and declined any pain medication. (*Id.*)

On September 15, 2022, an ultrasound on Bell's foot was completed. (*Id.* ¶ 13). On October 27, 2022, the results of the ultrasound and x-ray test

were reviewed with Bell and a medical provider. (*Id.*) It was determined that both results were benign. (*Id.*) However, despite the benign diagnosis, Bell "appear[ed] convinced that he has a tumor on his toe that needs removed." (*Id.* ¶ 14). Bell was "[a]dvised that [he could be scheduled] for a podiatry consult, but that consults go through an approval process based off of standard of care." (*Id.*) Bell reportedly replied, "[d]on't worry I can get this approved." (*Id.* ¶ 15). When Bell was told that he might not even have a tumor, Bell believed otherwise and insisted that "the ultrasound machine was[n't] working that well. The lady had to really press down and like slap the machine to get it to work." (*Id.*)

On September 19, 2022, before receiving the results of his ultrasound examination, Bell filed grievance no. 998550, whereby he alleged that the medical department of SCI-Benner Township at large did not provide him the necessary treatment when he received his ultrasound on September 15, 2022. (*Id.* ¶¶ 16-17). In his grievance, Bell complained about the wait for the ultrasound, the alleged deficient facilities and equipment in the prison, and prison's staff alleged deliberate indifference to his serious medical need. (*Id.* ¶ 18; Doc. 1 at 12). After not receiving a response within fifteen days, Bell

appealed the grievance to Defendant Houser, the superintendent of the prison. (Doc. 1 at 12). On October 12, 2022, Bell received a response from Defendant Ardery, the supervisor of the medical department, who stated that his ultrasound had been completed and that it showed no abnormalities. (*Id.*) Notably, Defendant Ardery—the remaining defendant in this action—was not named in the grievance, nor was she named in the appeal of that grievance to the facility manager. (Doc. 88 ¶ 19). The only point Ardery is mentioned during the grievance process is at Bell's appeal to final review, where Bell accuses Ardery of "lying" in her initial review response to his claim. (*Id.* ¶ 20). In that initial review response, Ardery had explained to Bell that his ultrasound scheduled date was made as soon as available, there was no report that the ultrasound machine was faulty, and he was scheduled to speak with a medical provider to review his results and discuss any further treatment, if needed. (*Id.* ¶¶ 21-22). Despite the fact that such a follow-up did occur and Bell was informed that the results were benign, Bell nevertheless insisted on making his final appeal in November of 2022. (*Id.* ¶¶ 23-24). In that appeal, Bell argued that the ultrasound machine was

- 5 -

broken and continued to assert his claim of medical deliberate indifference. (*Id.* ¶ 25).

Defendant Houser responded to Bell's grievance on November 3, 2022, and urged Bell to participate in any treatment provided to him by the medical department. (Doc. 1 at 11). On November 15, 2022, Bell submitted another request to Defendant Ardery in which he asked to be seen by a podiatrist, to have his tumor removed, and whether the prison had acquired a new ultrasound machine. (*Id.* at 14). Two days later, on November 17, 2022, Bell appealed his grievance to Defendant Little, the then-acting Secretary of the Department of Corrections ("DOC"). A month afterwards, Bell filed a complaint with this court regarding the above events, which was received and docketed on December 16, 2022. (Doc. 1).

The complaint asserted claims for deliberate indifference to a serious medical need, negligence, and medical malpractice. (*Id.* at 16). Bell sought declaratory relief, injunctive relief, and damages. (*Id.* at 16-17). Defendant Sottile moved to dismiss the complaint on March 10, 2023. (Doc. 31). Defendants Ardery, Houser and Little moved to dismiss on March 29, 2023. (Docs. 35-36). By issue of multiple orders, the court dismissed Plaintiff's

negligence and malpractice claims with prejudice; dismissed Plaintiff's deliberate indifference claims against Defendants Sottile, Houser, Little, and Tracy without further leave to amend the complaint; and permitted the case to proceed solely as to plaintiff's deliberate indifference claim against Defendant Ardery. (*See* Docs. 52, 57, and 65).

Defendant Ardery filed the instant motion for summary judgment on September 30, 2024. (Doc. 84). On October 15, 2024, Defendant Ardery filed a brief in support of her motion and a statement of material facts. (Docs. 88 and 89). Plaintiff has failed, despite being provided a warning and time extensions, to file an opposing brief and a response to the statement of facts. With the brief unopposed and the statement of facts deemed admitted, the motion is now ripe for disposition.

## II. <u>Standard of Review</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).* An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."

*Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a

- 9 -

genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

Local Civil Rule 56.1 requires a motion seeking summary judgment to include a statement of material facts not in dispute and requires the non-moving party to file a responsive statement of material facts. L. Civ. R. 56.1(a). Where, as here, a party fails to file a responsive statement of material facts, L. Civ. R. 56.1(a) deems a movant's statement of material facts undisputed for the purposes of the summary judgment motion. Although a motion for summary judgment may not be granted by default merely because it goes unopposed, *Anchorage Assocs. v. V.I. Bd. Of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990), the motion may be granted if the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003); *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 723 (D.N.J. 2013), *aff'd*, 559 F. App'x 139 (3d Cir. 2014).

## III. Discussion

Defendant Ardery presents three separate arguments in favor of finding she is entitled to summary judgment. The court will address each in turn.

## A. Whether Plaintiff failed to properly exhaust his administrative remedies.

Defendant Ardery argues that she is entitled to summary judgment because, *arguendo*, Plaintiff failed to exhaust his administrative remedies by failing to identify her by name in his initial grievance. The court disagrees.

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. §1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). An inmate must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or of the relief sought. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001).

"[I]t is beyond the power of ... any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) (reasoning that "[p]rison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners"). Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component). A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *McKinney v. Kelchner*, 2007 U.S. Dist. LEXIS 71958, *8 (M.D. Pa. 2007) (citing *Spruill v. Gills*, 372 F.3d 218, 227–32 (3d Cir. 2004); *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000)). In Pennsylvania, "[i]nmates who file grievances related to …

conditions of confinement are required to follow a formal grievance procedure of DC-ADM 804." *Peter v. Wynder*, 2008 WL 2943354, *5 (M.D. Pa. July 29, 2008).

In her brief in support of the instant motion, Defendant Ardery claims the following:

> Additionally, those filing grievances in accordance with DC-ADM 804, must provide a statement of facts relevant to the underlying claim and must specifically name persons within the grievance, "if practicable." *Robinson v. Johnson*, 343 F. App'x 778, 781 (3d Cir. 2009) (citation omitted); *Spruill*, 372 F.3d at 234. The inmate grievance filer must also "specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders or other law." *Robinson*, 343 F. App'x at 781.
>
> Plaintiff has procedurally defaulted any claim against Defendant Ardery, as he has failed to obey these requirements. Plaintiff failed to name any individual against whom he was bringing the allegations contained in his grievance, including Defendant Ardery. (SMF ¶¶ 16,19.) Instead, Plaintiff only names "the Medical Department staffing/facilities" as responsible for "not providing the necessary medical treatment 9/15/2022". (*Id.*) Such

- 14 -

a vague reference does not satisfy DC-ADM 804's naming requirements, and fails to serve the naming requirements purpose of providing "prison officials. . . notice of the persons claimed to be guilty of wrongdoing", such that officials can take corrective action. *See*, *Sanders v. Beard*, 2013 WL 1703582 (M.D. Pa. Apr. 19, 2013).

(Doc. 89 at 6-7). The court disagrees with this analysis. Defendant Ardery cites to *Spruill* for the limited holding that an inmate's failure to identify a defendant in a grievance may result in the procedural default of a claim against that defendant. (*See supra* at 14). But Defendant Ardery fails to analyze whether it was practicable for Plaintiff to identify Defendant Ardery in his grievance, discounts the fact that Defendant Ardery was ultimately identified in Plaintiff's appeal of his grievance, and overlooks the *Spruill* court's conclusion that such a procedural default can be excused.

In *Spruill*, the Third Circuit determined that DC–ADM 804 requires an inmate to identify specific persons in the grievance "if practicable". *Id*. 372 F.3d at 234. However, it is only the "unexplained failure to identify a responsible prison official in a grievance [that] constitutes a procedural default of the claim." *Freeman v. Dep't of Corr.*, 2011 U.S. Dist. LEXIS 17045,

- 15 -

*12 (M.D. Pa. 2011) (citing *Spruill*, 372 F.3d at 230). Additionally, the *Spruill* court concluded that "the prison can excuse an inmate's failure to [name an individual] by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance." *Spruill*, 372 F.3d at 234 (reasoning that while the "point is close ..., the grievances and the suit are about a larger-scale denial of adequate medical care, in which prison officials clearly knew [the defendant] was alleged to be implicated"). The Court explained that the "purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Id.*

Here, Bell filed the relevant grievance on September 15, 2022, alleging that the medical department of SCI-Benner Township at large did not provide him the necessary treatment when he received his ultrasound. (Doc. 88 ¶¶ 16-17). Although the reference in question may be characterized as overinclusive, it is not impermissibly vague as it specifically identifies the medical department at SCI-Benner Township over which Defendant Ardery exercised supervisory authority. The court does not deem it a foregone conclusion that Bell would have access to the identities of the relevant prison

officials in charge of the medical department to name them in his initial grievance. Thus, the court is not convinced that it was necessarily practicable for Bell to identify Defendant Ardery by name in his initial grievance. Nevertheless, even if such a failure did constitute a procedural default, the prison's grievance process excused it as Defendant Ardery is "fairly within the compass of the prisoner's grievance." *Spruill*, 372 F.3d at 234. Indeed, by identifying the medical department as a whole, Bell did satisfy the "purpose of the regulation here … to put the prison officials," such as the medical department supervisor in the case at hand, "on notice of the persons claimed to be guilty of wrongdoing." *Id.* This conclusion is further substantiated by the fact that it was Defendant Ardery herself who responded to the initial grievance, thereby demonstrating actual notice and involvement.

Our finding here is consistent with the holding in *Robinson*, Defendant Ardery's second cited to case, wherein the court found that any procedural default of failing to name a defendant was excused when that defendant in question "personally denied [the plaintiff's] 'Appeal to Facility Manager.'" 343 F. App'x at 78. Doing so achieved "[t]he primary purpose of a grievance [which] is to alert prison officials to a problem, not to provide personal notice

- 17 -

to a particular official that he may be sued." *Id.* (quoting *Williams*, 482 F.3d at 640). Similarly, here, Defendant Ardery was the person who responded to Bell's initial grievance when it was on appeal, demonstrating that his grievance achieved the primary purpose of alerting Defendant Ardery to the problem he faced. Accordingly, the court is unpersuaded by Defendant Ardery's argument and finds that Plaintiff's failure to specifically name her in the initial grievance does not constitute a sufficient basis to warrant summary judgment in her favor.

## B. Whether Plaintiff can establish Defendant Ardery's personal involvement.

Defendant Ardery argues that she is entitled to summary judgment because, *arguendo*, Plaintiff cannot establish Defendant Ardery's personal involvement in his alleged denial of care. The court agrees.

Section 1983 provides that persons acting under color of state law may be held liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. §1983. To state a Section 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a

- 18 -

person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct, and "cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fishser*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). In other words, a defendant "must have personal involvement in the alleged wrongs ... shown through allegations of personal direction or of actual knowledge and acquiescence[.]" *See Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (quoting *Rode*, 845 F.2d at 1207).

Allegations of personal involvement must be made with appropriate particularity in that the complaint must allege the particulars of conduct, time, place, and personal responsibility. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Subsequent knowledge of an incident is insufficient to demonstrate that a state actor played an "affirmative part" in the alleged misconduct. *See Rode*, 845 F.2d at 1207-08 (the after-the-fact submission

- 19 -

of a grievance is "simply insufficient" to establish a defendant's knowledge of an underlying constitutional violation at the time it occurred); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (Grievance Coordinator and Superintendent's involvement in review and denial of grievance insufficient to establish personal involvement). It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, No. 1:04-CV-1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho*, 423 F.3d at 353). Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient. *See Van Tassel v. Piccione*, 608 F. App'x 66, 69-70 (3d Cir. 2015).

Here, Bell failed to offer any specific material facts, admissible at trial, to establish Defendant Ardery's personal involvement in the alleged refusal to treat his medical needs other than her response to his grievance in an adverse Initial Review Response. (Doc. 88 ¶¶ 16, 19-21). "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." *Little v. Mottern*, 2017 WL 934464, at *11 (M.D. Pa. Mar. 7, 2017) (quoting *Rauso v. Vaughn*, 2000 WL 873285, at *16 (E.D. Pa.,

June 26, 2000). Such allegations are insufficient to establish a defendant's personal involvement under Section 1983. *See Watkins v. Horn*, 1997 WL 566080 at *4 (E.D. Pa. 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement); *Mitchell v. Keane*, 974 F.Supp. 332, 343 (S.D.N.Y. 1997) ("it appears from the submissions before the court that [Plaintiff] filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. [Plaintiff]'s dissatisfaction with this response does not constitute a cause of action."); *Caldwell v. Beard*, 2008 WL 2887810, at *4 (W.D. Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), *aff'd*, 2009 WL 1111545 (3d Cir. April 27, 2009); *Orrs v. Comings*, 1993 WL 418361, at *2 (E.D. Pa. Oct. 13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."). Furthermore, Bell lacks competent, admissible evidence to demonstrate that Defendant Ardery was involved in the scheduling of his medical appointments or cancellation thereof. Accordingly, the court finds that Defendant Ardery is entitled to summary judgment.

## C. Whether Plaintiff can establish a *prima facie* medical indifference claim.

In its earlier memorandum, the court found that the complaint, at that stage of the proceedings, sufficiently stated a claim of deliberate indifference against Defendant Ardery for allegedly receiving the information of the need to treat Bell's benign tumor and failing to schedule him for a second ultrasound or any other treatment. (Doc. 51 at 8-9). Defendant Ardery now argues that Bell lacks the competent, admissible evidence to establish material facts which would make a *prima facie* medical deliberate indifference claim. The court agrees.

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk

- 22 -

to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

"A medical need is serious, ... if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A ""failure to treat [the serious medical need] can be expected to lead to substantial and unnecessary suffering." *See* Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

In its earlier memorandum, this court held that Bell had plausibly pleaded that he had a tumor in his foot, which caused him significant pain and loss of feeling in that foot, constituting a sufficient serious medical need. However, after a review of the record, at this stage of the proceedings, the court agrees with Defendant Ardery's assessment that Bell failed to present

competent, admissible evidence sufficient to establish that his benign tumor presented a serious medical need. Other than Bell's bare allegations to the contrary, the record is devoid of any competent, admissible evidence that Bell suffered significant pain as result of the tumor or a loss of feeling in his foot.

Furthermore, even if Bell sufficiently showed a serious medical need, his claim still cannot succeed as he lacks competent, admissible evidence demonstrating Defendant Ardery was deliberately indifferent to that need.

Courts apply a subjective test when determining whether a prison official was deliberately indifferent to the risk of attack and harm to a plaintiff. *Farmer*, 511 U.S. at 838. For a prison official to be liable for acts or omissions resulting in harm to a plaintiff, such official must have actual knowledge of the substantial risk of harm, not mere constructive notice. *Id.* at 841. Furthermore, where the prisoner receives some amount of medical treatment, prison officials facing a deliberate indifference claim are afforded considerable latitude in the diagnosis and treatment of prisoners. *See Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Allegations of merely negligent treatment or even medical malpractice do not trigger the Eighth

- 24 -

Amendment's protections. *Estelle v. Gamble*, 529 U.S. 97, 105-106 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in tort law." *United States ex rel. v. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotations and citation omitted).

Here, Bell failed to present any competent, admissible evidence to establish that Defendant Ardery had personal knowledge of any serious medical need Bell faced before he filed his grievance on September 22, 2022—a week after his ultrasound examination was conducted. Nor did Bell present any competent, admissible evidence to establish that Defendant Ardery had actual knowledge of any serious medical need he faced when Defendant Ardery responded to the grievance—where she explained to Bell that the ultrasound showed no abnormalities. But even if the tumor was more serious, Bell failed to present any competent, admissible evidence to demonstrate that Defendant Ardery appreciated the level of severity or the potential harm the tumor presented to Bell. The medical staff at SCI-Benner Township, including Defendant Ardery, is entitled to deference for the

- 25 -

medical care provided to Bell, which included two diagnostic tests (an x-ray and ultrasound examination), prescription drugs, pain medication (which Bell refused to take), and a consultation with a medical provider. Bell has failed to present any competent, admissible evidence sufficient to rebut the presumption of appropriate medical care. Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim fails, and Defendant Ardery is entitled to judgment in her favor.

## IV. <u>Conclusion</u>

Based on the above, Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, will be granted.

<u>s/ Malachy E. Mannion</u>
**MALACHY E. MANNION**
**United States District Judge**

**Dated: May 28, 2025**
22-2003-01

- 26 -